UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RANDY RUSSELL YBARRA,

    Plaintiff,

        v.                            CAUSE NO. 3:20-CV-634-JD-MGG

PAMELA BANE, et al.,

    Defendants.

## OPINON AND ORDER

Randy Russell Ybarra, a prisoner without a lawyer, filed a complaint alleging he was retaliated against for filing a prior lawsuit. ECF 1. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In *Ybarra v. Warden*, 3:19-cv-112 (N.D. Ind. filed November 25, 2019), Ybarra was granted leave to proceed against the Warden in his official capacity on an injunctive relief claim. Ybarra was alleging his cell was too small for exercising and sought a court order requiring additional time out of his cell so he could adequately exercise. In this case, he alleges he was moved to a different cell in retaliation for filing that lawsuit.

"To prevail on his First Amendment retaliation claim, [the plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted).

Here, Ybarra has plausibly alleged facts supporting the first and third prongs of the test, but not the second prong. In the prior lawsuit, Ybarra wanted more out-of-cell time to exercise. However, that was not the only possible remedy to the problem of insufficient space and time to exercise. Moreover, neither he nor this court could have mandated that result rather than an alternative solution.

> The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Thus, even if the court had found a constitutional violation in his prior lawsuit, obligation to select the least intrusive means necessary would have allowed the Warden to decide how to meet the constitutional requirement to allow Ybarra to have adequate exercise. Moving Ybarra to a larger cell was one such remedy. That is to say, moving him to a larger cell was the equivalent of winning that lawsuit. Indeed, the

2

move resulted in that lawsuit being dismissed as moot. Thus, the complaint in this case has not plausibly alleged Ybarra's move to a different cell was a deprivation that would likely deter First Amendment activity in the future because obtaining relief consistent with a prior lawsuit would not likely deter future First Amendment activity.

Ybarra argues he should not have been moved to disciplinary segregation because he had not committed disciplinary offenses warranting placement in segregation. However, the Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility. *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Ybarra argues the conditions in segregation were harsher, but after *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (no liberty interest for 60 days in segregation); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005) (no liberty interest for 90 days in segregation). Here, Ybarra was in disciplinary segregation for only three months – from January 22, 2020, to April 20, 2020. ECF 1-1 at 5. Therefore, he had no right to due process before he was placed in disciplinary segregation.

Ybarra argues when his disciplinary segregation ended, he was retained in the same cell block on administrative segregation. *Id*. However, he acknowledges he cannot

3

be placed in general population because he needs to be segregated/protected from other inmates who might attack him. Therefore, his placement in administrative segregation does not state a claim.

Ybarra also describes various conditions of his confinement in segregation. He does not explain how any of the named defendants are involved with these conditions. However, to the extent he might have been trying to assert claims based on those conditions, they would have been mis-joined with his retaliation claim in this case. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854, 864 (7th Cir. 2018). If he wants to pursue such claims, they need to be brought in a separate lawsuit.

This complaint does not state a claim. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Here however, there are no additional facts which would state a retaliation claim based on Ybarra's transfer to a different cell. Therefore, it would be futile to permit him to amend.

However, before dismissing this case, it is necessary to discuss Ybarra's motion for a preliminary injunction in which he asks for protection. *See* ECF 12. His four prior similar requests in this case were denied. ECF 2, 3, 5, 6, 8, 10, and 11. As with those, this fifth request acknowledges he is in restrictive housing and therefore physically protected from attack by other inmates. What distinguishes this motion is he now says he has attempted suicide and plans to do so again. His request for protection from self-harm is outside the scope of this lawsuit. Nevertheless, his description of his mental

4

state is deeply concerning and requires the court to refer this to prison officials so Ybarra can be appropriately helped.

For these reasons, this case is **DISMISSED** pursuant to 28 U.S.C. § 1915A. The clerk is DIRECTED to fax or email a copy of this order and the preliminary injunction motion (ECF 12) to both the Indiana State Prison Warden and the Indiana Department of Correction.

SO ORDERED on December 4, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT